**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| SANTANDER CONSUMER USA, INC.,<br><br>              Plaintiff,<br>      v.<br><br>THE CITY OF SAN ANTONIO, ALANIS<br>WRECKER SERVICE, LLC AND<br>ALEJANDRO ALANIS,<br><br>              Defendants. | Civil Case No.:<br><br>**5:21-cv-172** |

## COMPLAINT

Santander Consumer USA, Inc., ("Santander") alleges violations of 42 U.S.C §§ 1983 & 1988 by Defendants, The City of San Antonio ("San Antonio"), Alanis Wrecker Service, LLC ("Wrecker"), and Alejandro Alanis ("Alanis,") (together, the "Defendants"), and will show the following:

### NATURE OF ACTION

1.      San Antonio regularly seizes vehicles as part of its law enforcement activity, but has no procedure for disposing of seized vehicles consistent with the basic due process requirements for notice and a hearing required by the Fourteenth Amendment.

2.      San Antonio also does not obtain a warrant or rely upon a valid exception to the warrant requirement for any of its conduct beyond the initial seizure as required by the Fourth Amendment. Instead, San Antonio employs the outdated and constitutionally unsound practice of summarily turning over seized vehicles to Wrecker, which imposes an *ex parte* lien for various charges. In this regard, it is San Antonio's policy to enlist Wrecker to tow and store vehicles and to allow Wrecker to lien and sell the vehicles to cover the costs of towing, storage, and other fees.

3.     San Antonio's policies also run afoul of the Constitutional prohibition on government impairment of obligations of private contracts. As part of its policy and joint enterprise with Wrecker, San Antonio requires Wrecker to enforce a city impound ordinance[1] that prevents lienholders from exercising their contractual and state law rights to protect their collateral when a vehicle has been seized and impounded by San Antonio.

4.     Based upon the Ordinance, it is San Antonio's policy to refuse to allow a lienholder to recover a vehicle unless the lienholder can demonstrate that the underlying security agreement has been in monetary default for more than 30 days, regardless of the lienholder's contractual agreement with the vehicle's owner. For every day that this and other lienholder conditions are not satisfied, San Antonio and Wrecker impose an *ex parte* storage lien that they claim takes priority over and subordinates the prior-in-time lienholder's lien.

5.     The San Antonio Ordinance's 30-day monetary default requirement is contrary to state law and substantially impairs Santander's rights under its security agreement contracts by thwarting two key contractual rights:

      a)  the right to protect the collateral by removing it from impound without delay or conditions; and

      b)  the right to maintain first-lien priority status.

6.     San Antonio's policy and practice of summarily turning over seized vehicles to Wrecker is a joint enterprise under a written contract with Wrecker. Wrecker's only power to enforce these obligations—and only right to withhold possession of vehicles at all—derive from the mantle of authority created by the San Antonio Ordinance and implemented by San Antonio police. Wrecker benefits by using its control over seized vehicles to profit by selling the vehicles

---

[1] San Antonio, Texas, Code of Ordinances Ch. 19, Div. 3, §§19-51 *et seq.* (the "Ordinance").

or by conditioning release of the vehicles upon payment of money to Wrecker, a significant portion of which is remitted to San Antonio. San Antonio benefits by obtaining Wrecker's services as a tow and impound provider free of charge, and by direct payment by Wrecker to San Antonio of portions of the proceeds from the detention and sale of vehicles.

7.      Attached to this Complaint as <u>Schedule-A</u> is a list of 31 vehicles in which Plaintiff Santander has, or had prior to Defendants' actions, a perfected lienholder's property interest (the "Vehicles" or generically, each "Vehicle").   After seizing these Vehicles, San Antonio unreasonably interfered with Santander's rights in violation of the Fourth Amendment, afforded no due process to Santander in violation of the Fourteenth Amendment, took the vehicles for its own public purpose without compensation in violation of the Fifth Amendment, and refused to return possession contrary to Santander's contracts with its customers in violation of Article I, Section 10, Clause 1 of the United States Constitution.

8.      Instead, San Antonio summarily disposed of the Vehicles by giving each to Wrecker as payment for the services that San Antonio contracted Wrecker to provide. Wrecker accepted possession of each Vehicle from San Antonio as compensation for its services, asserted an *ex parte* lien for those services, and insisted that Santander could not recover the Vehicles unless it complied with all conditions imposed by San Antonio.

9.      Defendants did not afford Santander the opportunity for a hearing, nor did Defendants compensate Santander in any way.

## JURISDICTION AND VENUE

10.      This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10, Clause 1 of the United

States Constitution. Accordingly, jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

11.    The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the federal claims, which have a common nucleus of operative fact.

12.    Venue lies in this Court pursuant to 28 U.S.C. § 1391, because Defendants reside in this judicial district, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

13.    Plaintiff Santander is an Illinois corporation and the holder of a perfected security interest in each of the vehicles described in Schedule-A.

14.    Defendant San Antonio is a municipal corporation organized and existing under laws of the state of Texas. San Antonio may be served, in accordance with Section 10 of its charter, by serving the City Clerk, Tina J. Flores, at 114 W. Commerce, San Antonio, Texas 78205.

15.    Defendant Wrecker is a Texas corporation engaged in the business of towing and storing motor vehicles, which also operates under the assumed name "San Antonio Vehicle Impound Facility."  Wrecker may be served through its registered agent, Alejandro L. Alanis, at its registered address, 1035 Culebra Rd., San Antonio, Texas 78201, or wherever he may be located.

16.    Defendant Alejandro Linares Alanis is an individual resident of Bexar County, Texas, is a Director and the President of Wrecker, and upon information and belief, is the person responsible for setting the policies and practices of Wrecker. Defendant Alanis may be served at his residence, 5118 Queen Bess Court, San Antonio, Texas 78228, or wherever he may be located.

## FACTS

### San Antonio and Wrecker's policies, practices, and regular customs for the seizure, detention, and disposition of vehicles

17.     San Antonio carries out its essential functions through its own police, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to parking violations.

18.     San Antonio delegates a portion of the performance of its essential functions to Wrecker. Specifically, San Antonio police use Wrecker to tow, store, dispose of, and sell vehicles seized by San Antonio police acting in the course of their duties as law enforcement officers.

19.     Pursuant to this relationship, San Antonio exercises governmental authority to seize vehicles.

20.     Pursuant to the terms of San Antonio City Ordinance § 19-54(a)(3), San Antonio's regular policy is to prevent a lienholder from removing a seized vehicle from San Antonio's control unless the lienholder demonstrates that the underlying security agreement has been in <u>monetary</u> default for at least 30 days.

21.     Pursuant to the Ordinance, San Antonio's regular policy is to deny a lienholder any due process relative to the seizure and detention of vehicles on which those lienholders hold a valid lien.

22.     Pursuant to the Ordinance, San Antonio's regular policy is to require payment of Wrecker's towing and storage fees by a lienholder before San Antonio will authorize release of a seized vehicle to that lienholder.

23.     Pursuant to the Ordinance, San Antonio's regular policy is also to require a lienholder to satisfy other conditions for release of seized vehicles, including providing non-

monetary items of value to San Antonio and Wrecker, such as a release of liability, an indemnity, a surety bond, and/or other arbitrary demands.

24.     San Antonio extends the mantle of its authority to Wrecker to ensure that Wrecker has a basis to claim that its seizure and detention of vehicles from lienholders is lawful and not an act of theft, as it would be if Wrecker took the vehicle without police authority.

25.     Wrecker is not paid money by San Antonio for its towing and storage services, but instead, accepts the seized vehicles from San Antonio—vehicles San Antonio does not own—as either partial or total payment for the towing and storage services Wrecker provides to San Antonio.

26.     Wrecker then impresses an *ex parte* lien for towing and storage fees, which it claims supersedes any other persons' rights in the vehicles.

27.     After assessing an *ex parte* lien, Wrecker continues to assess daily storage charges while refusing to return possession of the vehicles to *any* other person—even those with pre-existing property rights in the vehicles—until its fees and charges are paid *and* until Wrecker and San Antonio receive a release, indemnity, and surety bond (to which neither is entitled and for which no consideration is given).

28.     To effectuate disposal of a vehicle, Wrecker eventually forecloses on its purported lien by selling the vehicle—which purportedly terminates the pre-existing lienholder's interest—and sharing the proceeds with San Antonio.

29.     San Antonio benefits from granting the mantle of authority to control and dispose of the vehicles to Wrecker, thereby relieving San Antonio of the burden and costs of preserving the vehicles. Without Wrecker's complicit conduct, San Antonio would be forced to store and preserve vehicles following seizure.

30.     San Antonio benefits from Wrecker's assertion of an *ex parte* lien on, and eventual sale of, seized vehicles.  Without Wrecker's conduct, San Antonio would be forced to pay Wrecker for the services Wrecker provides San Antonio by using money instead of the vehicles that were seized.

31.     San Antonio benefits from its joint activity with Wrecker in that San Antonio receives a portion of all money derived from the joint enterprise, including from the sale of the vehicles.

32.     It is San Antonio and Wrecker's regular policy and custom, in the course of the above-described conduct, **not** to obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

a)   The initial seizure of the vehicle;

b)   The turnover of possession of the vehicle to Wrecker;

c)   The decision by San Antonio and/or Wrecker to continue to detain the vehicles after the initial reason for the seizure has passed;

d)   The demands by Wrecker and San Antonio for payment of money, and the demand that lienholders provide other things of value (such as a release, indemnity, and surety bond), in exchange for possession of the vehicle;

e)   The decision of Wrecker to assert an *ex parte* lien; and

f)   The eventual sale of the vehicle.

33.     Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action San Antonio or Wrecker decides to take thereafter, as referenced in ¶ 32(b-f) *supra*. Rather, San Antonio and Wrecker are required to obtain a warrant, or new justification for a warrantless seizure, once the reasons for the (possibly valid) initial warrantless seizure have dissipated.

34.     Furthermore, it is San Antonio and Wrecker's regular policy and custom, in the course of the above-described conduct, to provide neither any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

a)  The initial seizure of the vehicle;

b)  The turnover of possession of the vehicle to Wrecker;

c)  The decision by San Antonio and/or Wrecker to continue to detain the vehicles after the initial reason for the seizure has passed;

d)  The demands by Wrecker and San Antonio for payment of money, and the demand that lienholders provide other things of value (such as a release, indemnity, and surety bond), in exchange for possession of the vehicle;

e)  The decision of Wrecker to assert an *ex parte* lien; and

f)  The eventual sale of the vehicle.

35.     These actions, all taken in accordance with San Antonio and Wrecker's regular policies and customs for seizing and disposing of seized motor vehicles, violate the United States Constitution Article I, Section 10, Clause 1, as well as the Fourth, Fifth, and Fourteenth Amendments.

**San Antonio seized the Vehicles in which Santander held a Constitutionally protected interest, and gave those Vehicles to Wrecker for disposal**

36.     Wrecker actively and regularly towed and stored vehicles at the direction of San Antonio police officers acting in the regular course of their duties as commissioned peace officers.

37.     On or about the dates described in Schedule-A, San Antonio seized the Vehicles and instructed Wrecker to tow each away from the roadway and store it at San Antonio's direction.

38.     On or before the dates described in Schedule-A, Santander held the first priority security interest and lien that was duly recorded on the title to each of the Vehicles.

39.     Santander did not, at any time, have physical possession or custody of the Vehicles.

40.     Santander had no involvement with or knowledge of the operation of the Vehicles at the time each was seized by the San Antonio Police and/or Wrecker.

41.     Santander became aware that San Antonio and Wrecker had seized the Vehicles only after the seizure and possessory claim by Wrecker had allegedly attached.

42.     Neither San Antonio nor Wrecker took any measure to afford Santander an opportunity for a hearing relative to the seizure of the Vehicles, nor relative to the transfer of the Vehicles to Wrecker, the demand for money or other things of value in exchange for possession of the Vehicles, or the eventual disposal of the Vehicles and retention of the sale proceeds by Wrecker and San Antonio.

43.     Neither San Antonio nor Wrecker obtained a warrant, detention order, or other judicial directive, either before or after the seizures of the Vehicles on Schedule-A, relative to the seizures of the Vehicles or San Antonio and Wrecker's subsequent actions relative to the Vehicles.

44.     Wrecker sold the vehicle on the dates indicated in Schedule-A and retained the proceeds and/or divided the proceeds with San Antonio.

45.     San Antonio benefited from Wrecker's conduct in that San Antonio was freed from the cost and burden of preserving the Vehicles and obtained Wrecker's services to clear the roadway and store the Vehicles at no cost to San Antonio.

46.     San Antonio benefited from the joint enterprise with Wrecker in that San Antonio made money via its receipt of the proceeds from the sale of the Vehicles.

47.     Wrecker possessed the Vehicles only by virtue of its relationship with San Antonio and acted in concert with San Antonio to seize, detain, and dispose of the Vehicles. Wrecker had no other right to remove the Vehicles from the roadway and hold them against anyone. Wrecker

was, therefore, required to comply with the Constitution in relation to its seizure, detention, and disposal of the Vehicles.

**San Antonio and Wrecker's conduct constituted unreasonable seizures of Santander's property in violation of the Fourth and Fourteenth Amendments**

48.     In determining to seize the Vehicles and place them under control of Wrecker, San Antonio meaningfully interfered with constitutionally protected interests in the Vehicles.

49.     In arranging to place the property of another (the Vehicles), into the possession of Wrecker for purposes of disposing of the Vehicles, San Antonio meaningfully interfered with constitutionally protected interests in the Vehicles.

50.     San Antonio and Wrecker interfered with constitutionally protected interests in the Vehicles through Wrecker's continued detention of the Vehicles (and ultimate disposal by sale) to secure payment of an alleged lien for towing and storage charges for alleged services Wrecker rendered to San Antonio.

51.     In detaining the Vehicles and demanding a release from liability, an indemnity, a surety bond, and other valuable non-monetary consideration, all as conditions for the release of possession of Vehicles to Santander, Wrecker and San Antonio meaningfully interfered with Santander's constitutionally protected interests in the Vehicles.

52.     In detaining the Vehicles to secure payment of an alleged lien for towing and storage charges for alleged services Wrecker rendered to San Antonio, and in ultimately selling the Vehicles, Wrecker and San Antonio meaningfully interfered with Santander's constitutionally protected interests in the Vehicles while acting under color of law.

53.     These meaningful interferences with constitutionally protected property interests in the Vehicles by both San Antonio and Wrecker constituted seizures of the Vehicles under the

Fourth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution.

54.     Defendants' actions constituted multiple distinct seizures of the Vehicles: first, by removing the Vehicles from the roadway; second, by placing them into the possession of Wrecker; third, by continuing to detain the Vehicles while demanding money and non-monetary things of value; fourth, by asserting an *ex parte* lien to secure payment of Wrecker's alleged towing and storage fees; and fifth, by threatening to sell, and by selling, the Vehicles.

55.     Defendants were required to have separate justifications for each of the seizures not accompanied by a warrant, or to obtain a warrant.

56.     Defendants did not have a warrant or any other court order authorizing any of these distinct seizures of the Vehicles.

57.     There is no valid exception to the warrant requirement for San Antonio and Wrecker's conduct for any of these distinct seizures of the Vehicles.

58.     In particular, there is no valid exception to the warrant requirement for turning over possession of another person's property (the Vehicles), nor for accepting possession of that property, in lieu of payment for services.

59.     There is also no valid exception to the warrant requirement for continuing to detain a person's property (the Vehicles) as collateral to secure payment of an *ex parte* lien.

60.     There is also no valid exception to the warrant requirement for selling that person's property (the Vehicles) to foreclose on that *ex parte* lien.

61.     Because none of the seizures was accompanied by any warrant, court order, or valid exception to the warrant requirement, each distinct seizure was unreasonable in violation of the Fourth Amendment to the United States Constitution.

**San Antonio and Wrecker's conduct constituted deprivation of Santander's property without due process of law in violation of the Fourteenth Amendment**

62.     San Antonio is required to comply with due process requirements and to provide holders of property interests in vehicles, including Santander, with notice and an opportunity to be heard before any deprivation of an interest in a seized vehicle.

63.     San Antonio did not secure judicial review of its initial seizure of the Vehicles either before or shortly after the initial seizure occurred.

64.     San Antonio did not secure judicial review of its placement of the Vehicles into Wrecker's possession, either before or shortly after the seizure occurred.

65.     San Antonio did not secure judicial review of its imposition of non-monetary conditions on the release of the Vehicles to Santander's possession, such as the requirement that Santander prove that the underlying security agreement was in <u>monetary</u> default for at least 30 days, or that Santander provide a release, indemnity, or surety bond as a condition of release of the Vehicles to Santander.

66.     San Antonio did not secure judicial review of San Antonio and Wrecker's continued detention of the Vehicles (and ultimate disposal by sale) to secure payment of an alleged *ex parte* lien for towing and storage fees relating to the services Wrecker performed for San Antonio.

67.     In delegating its essential governmental function of clearing the roadway to Wrecker, San Antonio does not require Wrecker to provide procedural safeguards, such as notice and opportunity to be heard, to interested parties prior to imposition of a lien on the towed vehicle or the continued detention of the vehicle and accrual of storage charges.

68.     Because neither San Antonio nor Wrecker provided any procedure for review of their actions by a neutral decisionmaker, neither provided Santander with constitutionally adequate notice of those procedures.

69.     The way Santander became aware of San Antonio and Wrecker's seizure of the Vehicles, as well as Wrecker's continued possession of the Vehicles, did not constitute adequate notice for the purposes of due process.

70.     By not providing constitutionally adequate notice, nor any right to be heard before a neutral decisionmaker regarding any of the aforementioned actions, San Antonio and Wrecker's actions deprived Santander of its property without due process of law in contravention of the Fourteenth Amendment to the United States Constitution.

**San Antonio's ordinance, San Antonio's turnover of the Vehicles to Wrecker as compensation for the services Wrecker provided San Antonio, and San Antonio's retention of the proceeds of the sale of the Vehicles, all resulted in the taking of Santander's property for a public purpose without just compensation in violation of the Fifth Amendment**

71.     San Antonio's essential government functions include seizure of vehicles through its police for a variety of reasons.

72.     San Antonio delegated a portion of the performance of that essential function to Wrecker, who towed, stored, and detained the Vehicles at the request of the San Antonio police.

73.     San Antonio compensated Wrecker, in whole or in part, by turning over possession of the Vehicles to Wrecker, who lawfully possessed the Vehicles only by virtue of having obtained them from San Antonio.

74.     Wrecker accepted the Vehicles as compensation, in whole or in part, for the services it provided to San Antonio, namely the towing and storage of the Vehicles that San Antonio had seized.

75.     San Antonio benefited by granting the mantle of its authority to control the Vehicles to Wrecker by being relieved of the burden and costs of towing and storing the Vehicles, or of compensating Wrecker for towing and storing the Vehicles. San Antonio further benefited by Wrecker's remission of a substantial portion of the proceeds of the sale of the Vehicles to San Antonio.

76.     San Antonio thereby took Santander's interests in the Vehicles for public use.

77.     By taking Santander's private property for public use, without compensation to Santander—indeed, facilitating Wrecker's attempts to take more of Santander's property, *i.e.* its money, in exchange for the return of the Vehicles—San Antonio and Wrecker's actions violated the takings clause of the Fifth Amendment to the United States Constitution.

### San Antonio's ordinance substantially impairs Santander's contract without legitimate purpose

78.     Santander's liens in the Vehicles are based upon contracts (security agreements) with the Vehicles' owners.

79.     Santander's contracts ensure that Santander may preserve its first priority lien interest in the Vehicles by immediately removing them from any governmental impound.

80.      Santander's contracts ensure that Santander may preserve its first priority lien interest in the Vehicles by immediately removing the vehicle from any governmental impound so that the Vehicles are not sold and Santander's lien lost by such sale.

81.     San Antonio's Ordinance § 19-54 precludes a lienholder from asserting its right to recover a vehicle based upon non-monetary default terms. San Antonio's ordinance § 19-54 substantially impairs Santander's contractual right to protect and preserve its interests in the Vehicles by:

a) destroying Santander's right to remove a vehicle from impound by reason of a non-monetary default; and

b) subordinating Santander's prior in-time perfected lien to the lien by San Antonio and Wrecker which increases in amount every day that Santander is not permitted to exercise its non-monetary default right to recover its Vehicles; and

c) destroying Santander's lien by selling the Vehicles after refusing to permit Santander to recover the Vehicles by exercising its non-monetary default right to recover the Vehicles.

82.     All these impairments undermine the central protections granted to Santander under the contracts relating to each of the Vehicles.

83.     All the impairments described interfere with the reasonable expectation of both the Vehicles' owners and Santander, as such protections benefit both the Vehicles' owners and Santander.

84.     All the impairments described prevent Santander from safeguarding its rights in the Vehicles.

85.     The impairments serve no legitimate public purpose, as they violate Texas State Law, which permits a lienholder to protect its vehicle collateral without having to prove existence of a monetary default. *See* *John Deloach Enterprises, Inc. v. Telhio Credit Union*, 582 S.W.3d 590, 596.

86.     The impairments are not reasonably related to any public purpose.

87.     The impairments target lienholders, including Santander, for the inappropriate purpose of delaying lienholders from recovering vehicles, including the Vehicles, so that San Antonio and Wrecker can inflate the storage fees claim that they impress as a condition for release.

88.     The impairments target lienholders, including Santander, for the inappropriate purpose of delaying lienholders from recovering vehicles, including the Vehicles, so that San

Antonio and Wrecker may increase the likelihood of selling vehicles, including the Vehicles, for profit by taking the proceeds of such sale.

89.     San Antonio and Wrecker, by their joint imposition of the impairments, violated the Contracts Clause of Article I, Section 10, Clause 1, of the United Stated Constitution.

## CAUSES OF ACTION

### COUNT I

**Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983**
**(Deprivation of Property by Unreasonable Seizure)**
**(Deprivation of Property Without Due Process of Law)**
**(Taking of Property Without Just Compensation)**
**(Substantial and Unjustified Impairment of Contract)**

90.     Santander is the holder of a constitutionally protected property interest in the Vehicles.

91.     Defendants acted under color of state law to deprive Santander of valuable property interests and contract rights—namely (a) Santander's lien interest in the vehicles; (b) Santander's money that Wrecker sought to force Santander to pay to Wrecker; (c) Santander's right to possession of the Vehicles; (d) Santander's other valuable rights by seeking to force Santander to provide a release, indemnity, and surety bond; and (e) Santander's right to protect its security by using its non-monetary default terms to recover the Vehicles—by seizing, detaining and disposal of the Vehicles without providing any form of notice or hearing whereat Santander could protect its interests, and without any compensation to Santander, and by insisting that Vehicles can be recovered only upon demonstration of monetary default.

92.     Defendants acted under color of law to seize Santander's property, and such seizure was unreasonable.

93.     Defendants acted under color of law to deprive Santander of its property without due process of law.

94.     Defendants acted under color of law to deprive Santander of its property for government purposes without just compensation to Santander.

95.     Defendants acted under color of law to substantially interfere with Santander's contracts for no significant and legitimate public purpose.

96.     San Antonio and Wrecker knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, Clause 1, the Contract Clause.

97.     As a direct and proximate result of San Antonio and Wrecker's violation of Santander's constitutional rights, Santander has suffered damages based upon the lost value of the Vehicles, loss of use of the Vehicles, the lost revenue stream from the retail installment contracts associated with the Vehicles, and other damages. San Antonio provided a mantle of authority that enhanced the power of Wrecker and was the moving force that allowed Wrecker to exercise control over the Vehicles.

98.     Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

99.     The conduct taken by San Antonio and Wrecker in relation to the Vehicles was taken in accordance with San Antonio and Wrecker's standard policy and/or custom for the handling and disposal of seized vehicles.

100.    The official decisions attributable to Wrecker were attributable to Alejandro Alanis, who dictated Wrecker's standard policy and/or custom in relation to the handling and disposal of seized vehicles obtained from San Antonio.

101.    The failure by San Antonio and Wrecker policy makers to properly train or supervise subordinates regarding the process due in conjunction with the seizure, detention and assertion of charges and liens against vehicles—as made clear by numerous Court decisions confirming well settled rules of law—amounts to deliberate indifference to the rights of persons who have interests in vehicles that are seized, detained, subjected to charges, and liened by Wrecker after seizure by San Antonio.

102.    But for San Antonio and Wrecker's deprivational policy, decisions, practices, and failures above described, Santander would have had the right to recover and would have recovered the Vehicles without delay or with minimal delay by reason of measures that preserve legitimate interests but are less intrusive than continued detention of the Vehicles; without incurring liability for or loss due to towing and storage charges impressed *ex parte*; and without incurring liability for or loss due to further storage charges accruing daily and without loss of lien priority to the claim asserted by Wrecker against the Vehicles and without loss of the Vehicles by sale.

## COUNT II

**Violation of Texas Constitution**
**(Deprivation Of Property Without Due Process Of Law)**
**(Deprivation By Unreasonable Seizure)**
**(Deprivation Of Property Without Just Compensation)**
**(Substantial And Unjustified Impairment Of Contract)**

103.    San Antonio and Wrecker's actions, as recounted above, also violate the corresponding protection of the Texas State Constitution set forth in Article I, Sections 19, 9, 16 and 17.

## COUNT III

**Declaratory Relief**

104.    An actual controversy has arisen and now exists between Santander and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

105.     Santander seeks a declaration that Defendants' conduct and policies evidenced by San Antonio's Ordinance, Ch. 19, Div. 3, §§19-51 *et seq.* is unconstitutional, as is the Ordinance itself.

106.     Defendants assert that their conduct is constitutional.

107.     Santander seeks a declaration that San Antonio and Wrecker's assertion of claims against the Vehicles are null and void as are all actions by San Antonio and Wrecker to exert control over the Vehicles after the initial seizure.

108.     Santander seeks a declaration that the violations of the United States Constitution herein described occurring by reason of San Antonio's and Wrecker's actions relative to the Vehicles are chargeable to San Antonio, Wrecker, and Alejandro Alanis, jointly and severally.

109.     Santander seeks a declaration that San Antonio, Wrecker, and Alejandro Alanis are liable to Santander pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1988 for all damages and attorney's fees suffered and incurred by Santander.

110.     Santander seeks a declaration that, to the extent Defendants seek to rely on any provisions of local law to justify the above-described actions, those laws are unconstitutional.

### COUNT V

**Conversion**
**(As Against Wrecker and Alanis Only)**

111.     Wrecker exercised wrongful dominion and control over the Vehicles be refusing to release the Vehicles to Santander and/or by selling the Vehicles.

112.     Alejandro Alanis directly controls the actions of Wrecker, specifically, in converting the Vehicles.

113.     Santander has suffered damages for lost value, loss of use, depreciation, and other actual damages as a result of Wrecker and Alejandro Alanis's conduct.

114.    The actions of Wrecker and Alejandro Alanis in refusing to release the Vehicles unless Santander complied with Wrecker's demands, and in selling the Vehicles without notice required Santander to litigate this issue, thereby entitling Santander to recover its attorneys' fees as consequential damages of Wrecker and Alejandro Alanis's actions.

115.    Wrecker and Alejandro Alanis's actions warrant punitive damages because such conduct continued despite direct state court authorities condemning such conduct.

## **PRAYERS FOR RELIEF**

Accordingly, Santander requests that this Court:

A.  Grant judgment in favor of Santander and against Defendants on all causes of action asserted herein;

B.  Declare that Defendants violated Santander's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10, Clause 1, of the United States Constitution;

C.  Declare unconstitutional, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, San Antonio's policy and/or custom of effectuating the governmental purpose of clearing motor vehicles from the roadway by compensating tow operators with the property of others—namely, other persons' motor vehicles—and permanently enjoin such practices;

D.  Declare unconstitutional San Antonio's policy and/or custom of placing other person's motor vehicles into the possession of third-party tow operators, with no preexisting interest in those vehicles, without just compensation and without providing notice or an opportunity to be heard before a neutral decision maker regarding the propriety of San Antonio's actions in disposing of those vehicles and permanently enjoin such practices;

E.  Declare unconstitutional, in violation of Article I, Section 10, Clause 1, of the United Stated Constitution the restriction of a lienholder rights set forth in San Antonio's Ordinance 19-54;

F.  Permanently enjoin Wrecker from detaining possession of motor vehicles it obtains as a result of its relationship with government entities, including San Antonio, without providing notice and a hearing where persons with protectable interests may challenge Wrecker's actions, and permanently

enjoin restriction on lienholder rights to recover vehicles upon non-monetary default;

G.   Award Santander actual and nominal damages against all Defendants, jointly and severally;

H.   Award Santander the cost of prosecuting this action together with attorney's fees pursuant to 42 U.S.C. §1988;

I.   Award compensatory damages, consequential damages, punitive damages, costs, and attorneys' fees against San Antonio, Wrecker and Alejandro Alanis, jointly and severally, and in favor of Santander;

J.   Declare any reliance by Defendants on local law inconsistent with the within-described constitutional rights, and therefore declare any such state or local law, to the extent determined applicable, to be unconstitutional as applied; and

K.   Award such other and different relief that the Court, in the exercise of its discretion, deems just and proper.


Dated: February 24, 2021

<div style="margin-left:40%">

Respectfully submitted,

**New & Hall PLLC**

*Everett New*

Everett New
   Texas Bar No. 24046518
   enew@newhallpllc.com

Peter C. Hall
   Texas Bar No. 24044224
   peter@newhallpllc.com

*100 N. Central Expy., Ste. 402*
*Richardson, Texas 75080*
*(972) 645-0110*

**Counsel for Plaintiff**

</div>

## Schedule A

| SAN ANTONIO VEHICLE IMPOUND FACILITY - SANTANDER VEHICLE SALES | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Vehicle** | **VIN** | **Customer** | **Sale Date** | **Purchaser** | **Sale Amount** | **Towing Fees** | **Other Fees** | **Storage Start** | **Days Stored** | **Est. Storage Fees** | **Est. Excess Owed** |
| 2017 Dodge Ram | 1C6RR6LT3HS629460 | Magdelena Cortez | 3/20/2019 | City of San Antonio (police use) | $1.00* | $ 175.00 | $ 50.00 | 12/6/2018 | 104 | $ 2,476.60 | |
| 2011 Ford Escape | 1FMCUODG1BKC50939 | Jeanette Pineda | 10/19/2019 | Sergio Espara Roque | $ 875.00 | $ 175.00 | $ 50.00 | 12/4/2018 | 319 | $ 7,131.35 | $ - |
| 2017 Dodge Grand Caravan | 2C4RDGCG7HR689923 | Gaeta Porfiria | 2/6/2019 | V.A. Auto Sales | $ 6,200.00 | $ 175.00 | $ 50.00 | 12/14/2018 | 54 | $ 1,394.10 | $ 4,805.90 |
| 20113 Ford Mustang GT | 1ZVBP8CF0D5206184 | Robert Garcia | 2/20/2019 | Parra Autoplex | $ 4,100.00 | $ 175.00 | $ 50.00 | 11/30/2018 | 82 | $ 2,000.30 | $ 2,099.70 |
| 2017 Fiat 500X | ZFBCFXCBXHP613332 | Roberto Tijerina | | No Sale Receipt in Record | | | | 4/21/2019 | | | |
| 2018 Dodge Charger | 2C3CDXBG0JH289371 | Luz Constancio | | No Sale Receipt in Record | | | | 5/4/2019 | | | |
| 2018 Mitsubishi Mirage | ML32A3HJ3HJH009043 | Jennifer Puente | | No Sale Receipt in Record | | | | 4/20/2019 | | | |
| 2018 Ford Escape | 1FMCUOGD6JUA84194 | Antonio Garcia | | No Sale Receipt in Record | | | | 4/7/2019 | | | |
| 2018 Jeep Renegade | ZACCJABB1JPH80990 | Liliana Munro | | No Sale Receipt in Record | | | | 3/26/2019 | | | |
| 2014 Dodge Avenger | 1C3CDZAG7EN219876 | Belinda Martinez | 5/22/2019 | Gilbert Campa | $ 4,400.00 | $ 175.00 | $ 50.00 | 4/3/2019 | 49 | $ 1,285.85 | $ 3,114.15 |
| 2018 Jeep Renegade | ZACCJABB3JPH23237 | Yolanda Ahuyon | | No Sale Receipt in Record | | | | | | | |
| 2018 Jeep Renegade | ZACCJABB9JPH08483 | Lauren Seals | | No Sale Receipt in Record | | | | | | | |
| 2018 Dodge Charger | 2C3CDXBG4JH257703 | Katherine Goertz | | No Sale Receipt in Record | | | | | | | |
| 2012 Chrysler 300 | 2C3CCACG8CH307942 | Jose Medina | 3/14/2019 | City of San Antonio (police use) | $1.00** | $ 175.00 | $ 50.00 | 10/4/2018 | 161 | $ 3,710.65 | |
| 2012 Jeep Liberty Sport | 1C4PJLAKXCW159302 | David Jones | | No Sale Receipt in Record | | | | | | | |
| 2008 Mercedes Benz | WDDGF54X78F076847 | Myesha Funderburk | 6/19/2019 | MSM US Auto | $ 2,550.00 | $ 175.00 | $ 50.00 | 3/7/2019 | 104 | $ 2,476.60 | $ 73.40 |
| 2019 Jeep Cherokee | 1C4PJLCB8KD325792 | Chelsea Barragan | 6/12/2019 | Juan Cordova | $ 5,300.00 | $ 175.00 | $ 50.00 | 2/13/2019 | 119 | $ 2,801.35 | $ 2,498.65 |
| 2011 Honda Pilot | SFNYF4H23BB101634 | Jose Jimenez, Jr. | 2/16/2019 | John Wayne Allen | $ 5,900.00 | $ 175.00 | $ 50.00 | 12/30/2018 | 48 | $ 1,264.20 | $ 4,635.80 |
| 2013 Kia Forte | KNAFU4A20D5694281 | Nathaniel Gonzales | 2/27/2019 | Yousef Abdel Kareem | $ 2,900.00 | $ 175.00 | $ 50.00 | 11/2/2018 | 117 | $ 2,758.05 | $ 141.95 |
| 2018 Jeep Renegade | ZACCJABB7JPH23046 | William Wayne Stevens | | No Sale Receipt in Record | | | | | | | |
| 2019 Dodge Ram 1500 | 1C6SRFKT2KN515975 | Jack Brooks | 7/10/2019 | V.A. Auto Sales | $ 22,500.00 | $ 175.00 | $ 50.00 | 4/2/2019 | 99 | $ 2,368.35 | $ 20,131.65 |
| 2015 Honda Fit | 3HGGK5H52FM717190 | Amanda Longoria | 6/12/2019 | Parra Autoplex | $ 2,300.00 | $ 175.00 | $ 50.00 | 3/26/2018 | 443 | $ 9,815.95 | $ - |
| 2019 Jeep Cherokee | 1C4PJLCB7KD248946 | Sydney Franklin | 6/12/2019 | Rusel Felts | $ 10,700.00 | $ 175.00 | $ 50.00 | 2/25/2019 | 107 | $ 2,541.55 | $ 8,158.45 |
| 2018 Jeep Renegade | ZACCJABB1JPJ10482 | Dominae Savere | 2/27/2019 | Pablo Gonzalez | $ 3,500.00 | $ 175.00 | $ 50.00 | 1/15/2019 | 43 | $ 1,155.95 | $ 2,344.05 |
| 2016 Chevrolet Sonic | 1G1JC5SH9G4179520 | Olga Angeles | 3/6/2019 | Yousef Abdel Kareem | $ 4,300.00 | $ 175.00 | $ 50.00 | 1/20/2019 | 45 | $ 1,199.25 | $ 3,100.75 |
| 2016 Chevrolet Equinox | 2GNALCEK7G6348765 | Melissa Briones | 7/17/2019 | Kameran Mawlood | $ 8,000.00 | $ 175.00 | $ 50.00 | 12/16/2018 | 213 | $ 4,836.45 | $ 3,163.55 |
| 2018 Dodge Journey | 3C4PDCAB3JT447155 | Issac Woo | 2/27/2019 | Heibal Naghdi Sobbi | $ 7,700.00 | $ 175.00 | $ 50.00 | 1/15/2019 | 43 | $ 1,155.95 | $ 6,544.05 |
| 2015 Chrysler 200 | 1C3CCCBG5FN581818 | Jennifer Villareal | 1/9/2019 | Martha Veronica Deleon | $ 2,100.00 | $ 175.00 | $ 50.00 | 11/14/2018 | 56 | $ 1,437.40 | $ 662.60 |
| **TOTAL** | | | | | **$ 131,450.00** | | | | | | **$ 99,597.65** |

*Actual value - $26,750
** Actual Value - $11,375

Total proceeds plus $38,123 for vehicles "sold" to police

| VEHICLES CURRENTLY DETAINED | | | | |
|---|---|---|---|---|
| **Vehicle** | **VIN** | **Customer** | **Impound Date** | **Value** |
| 2017 Nissan Maxima | 1N4AA6AP8HC376770 | John Mooso | 12/11/2020 | $14,375.00 |
| 2014 Ford Escape | 1FMCU0J95EUD08680 | Eduardo Salazar | 12/17/2020 | $7,975.00 |
| 2020 Mitsubishi Outlander | JA4AD3A32LJ000996 | Joe Hernandez | 12/25/2020 | $16,800.00 |